UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VENITA BENNETT,<br><br>      Plaintiff<br><br>      v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>      Defendant. | Case No. 2:15-cv-08144-GJS<br><br>**MEMORANDUM OPINION AND ORDER** |

## INTRODUCTION

On October 10, 2015, Plaintiff Venita Bennett ("Plaintiff") filed a complaint seeking review of the Commissioner's unfavorable decision denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Plaintiff alleges that the Administrative Law Judge ("ALJ") erred by failing to fully and fairly develop the record to resolve ambiguities therein, particularly regarding Plaintiff's mental and physical limitations based on a diagnosis of cerebral atrophy caused by a history of alcohol abuse. [Dkt. 18 ("Pltf.'s Mem.") at 2-5.] For the reasons set forth below, the Court affirms the decision of the ALJ and orders that judgment be entered accordingly.

///

# PROCEDURAL HISTORY

Plaintiff applied for DIB on March 19, 2012, and for SSI on March 29, 2012. [Dkt. 18. Administrative Record ("AR") 16, 85, 86.] In both applications, she alleged disability as of January 1, 2010, due to hypertension, psoriasis, hyperthoid [sic], stomach problems, and severe depression. [AR 63, 74.] The applications were denied initially on November 30, 2012. [AR 87-92.] On January 5, 2014, ALJ Robert S. Eisman held a hearing. [AR 16-25.] The ALJ issued a decision finding Plaintiff not disabled on April 1, 2014. [AR 13-29.] Plaintiff sought review from the Appeals Council on April 24, 2014. [AR 10-12.] On September 15, 2015, the Appeals Council denied review, and the ALJ's decision became the Commissioner's final determination. [AR 1-4.] Plaintiff timely filed this action for judicial review under 42 U.S.C. § 405(g).

# FACTUAL BACKGROUND

As the parties are familiar with the proceedings below, the Court summarizes only those facts relevant to the single issue presented. After reviewing the medical records, conducting a hearing, and leaving the record open for submission of additional medical records (some of which were provided [AR 16, 430-1094 (Harbor UCLA records)]), the ALJ found that Plaintiff had the following severe impairments:

> a history of moderate to severe global cerebral atrophy, with microangiopathic ischemic changes (including a history of Wernicke's Encephalopathy); hypertension; hypothyroidism; hyperlipidemia; eczema/psoriasis; a history of anemia; low back and bilateral ankle arthritis; and history of alcohol abuse disorder.

[AR 19 (citing 20 C.F.R. § 404.1520(c); 20 C.F.R. § 416.920(c)).] The ALJ found that none of these impairments, alone or in combination, met or medically equaled the severity of a listed impairment (including, among others, consideration of substance abuse disorders). [AR 19 (internal citations omitted).]

///

The ALJ considered the medical opinion and underlying records from Dr. John Sedgh, a State Agency internal medicine consultative examiner. Dr. Sedgh concluded that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; could stand and walk two hours in an eight-hour day with normal breaks; that Plaintiff needed a cane for prolonged walking; could sit for six hours in an eight hour day; and could occasionally kneel, crouch, and stoop. He also commented on Plaintiff's limited range of motion and antalgic gait. [AR 20; 351-52.] Dr. Sedgh's evaluation was based, in part, on a September 2012, lumbar spine x-ray, and September 24, 2012, x-rays of claimants ankles. Dr. Sedgh's RFC assessment was confirmed by the State Agency reviewing physician. [AR 63, 74.] The ALJ gave Dr. Sedgh's confirmed opinion great weight, "[g]iven the absence of any treating source medical statements." [AR 21.]

The ALJ also discussed Plaintiff's hospitalizations "for altered mental status with a principal diagnosis of Wernicke's encephalopathy" [AR 21], and made several significant observations based on the medical records. First, the ALJ noted that the records from Plaintiff's hospitalizations did not indicate that her altered mental status was an impairment that lasted (or was expected to last) 12 continuous months in duration (citing Social Security Ruling ("SSR") 82-52 and 85-28) requiring any additional limitations. [*Id.*] And, significantly, when questioned by both the ALJ and her own counsel at the hearing, Plaintiff did not state that she had any limitations related to mental state. [AR 45, 54-56.] It was the ALJ, not counsel or Plaintiff, who later specifically noted the hospitalizations for altered mental status and asked Plaintiff about them. [AR 56.] Plaintiff did not indicate that the problem was significant or ongoing, and chalked the cause up to "a lot of stress." [AR 56.]

With respect to other potential issues raised in the medical records associated with the hospitalizations, the ALJ considered a February 2011 MRI that showed "moderate to severe cerebral atrophy" [AR 21; 267, 281, 315, 329, 490] due to Wernicke's encephalopathy. The records showed that Plaintiff had only mild

3

1 dizziness that was improving, full motor strength, and intact motor function. She
2 was discharged in good condition. [AR 271, 446.] While she had some lower
3 extremity weakness and unstable gate, this was noted as improving and was
4 suspected to be caused by deconditioning from the long hospitalization, not due to
5 an impairment or any long-term (lasting more than 12 months) functional limitation.
6 [*Id.*] Taking a conservative approach, the ALJ addressed potential concerns from
7 the cerebral atrophy and Wernicke's diagnoses with additional limitations, beyond
8 those recommended by Dr. Sedgh, as shown in Plaintiff's ultimate RFC, below.

9       In sum, based primarily on Dr. Sedgh's RFC, but with additional limitations
10 added to address Plaintiff's history of alcohol abuse, diagnosis of Wernicke's
11 encephalopathy, and the results from her hospital stays in January, February, and
12 March 2011, the ALJ's determined that Plaintiff:

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 20 CFR 416.967(b), in that she can exert up to 20 pounds of force occasionally and/or up to 10 pounds of force frequently and/or a negligible amount of force constantly to move objects. The claimant can stand and walk up to 2 hours and sit up to 6 hours in an 8-hour workday with normal breaks (SSR 83-10; SSR 96-9p). She can perform work that does not require climbing ladders, ropes or scaffolds, and no more than occasional climbing of ramps or stairs, balancing, stooping, kneeling, crouching, or crawling. The claimant can do work that does not require more than frequent exposure to extreme cold or unprotected heights, and which does not require exposure to toxic or caustic chemicals (20 CFR 404.1520; 20 CFR 416.920(e)).

22 [AR 19.]

### GOVERNING STANDARD

24       Under 42 U.S.C. § 405(g), this Court reverses only if the Commissioner's
25 "decision was not supported by substantial evidence in the record as a whole or if
26 the [Commissioner] applied the wrong legal standard." *Molina v. Astrue*, 674 F.3d
27 1104, 1110 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a
28 reasonable mind might accept as adequate to support a conclusion," and "must be

'more than a mere scintilla,' but may be less than a preponderance." *Id.* at 1110-11; *see Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotations omitted). This Court "must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015) (internal quotations omitted). If "the evidence is susceptible to more than one rational interpretation, we must uphold the [Commissioner's] findings if they are supported by inferences reasonably drawn from the record." *Molina,* 674 F.3d at 1111.

## DISCUSSION

Plaintiff's sole issue in this appeal is her contention that the ALJ did not fully and fairly develop the record. Specifically, while the ALJ determined from the available medical records that Plaintiff had a history of moderate to severe cerebral atrophy, with microangiopathic ischemic changes, including a diagnosis of Wernike's Encephalopathy from severe alcohol use, Plaintiff contends that the ALJ should have "sent the plaintiff out for a neurological consultative examination" before assessing her RFC. [Pltf.'s Mem. at 2.] The Court does not find that the ALJ's duty to further develop the record was triggered here.

It is unquestionable that Plaintiff cannot "be considered to be under a disability unless [s]he furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5); *see* 20 C.F.R. §§ 404.1512(a) & (c). Put another way, she bore the "duty to prove that she was disabled." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). Although the burden is on the claimant to show she is disabled, the Commissioner shares the burden of developing the record evidence. "In Social Security cases, the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (internal quotations omitted).

Nonetheless, the ALJ is not a roving investigator; his duty "to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes,* 276 F.3d at 459-60 (emphasis added); *see Webb*, 433 F.3d at 683 (explaining that the duty to enlarge the record only arises if the evidence is ambiguous, the ALJ finds that the record is inadequate, or the ALJ relies on an expert's conclusion that the evidence is ambiguous).

Here, Plaintiff contends that the ALJ committed error because "he failed to send plaintiff out for a neurological consultative examination (CE) even though plaintiff was noted to have moderate to severe cerebral atrophy and/or failed to obtain a medical expert to determine the severity of plaintiff's physical impairments and whether or not the plaintiff met or equaled a listing." [Pltf.'s Mem. at 2]. The Court disagrees. Plaintiff has not articulated a plausible theory that the record was inadequate to allow proper evaluation of the evidence. Whether or not the internal medicine consultative physician referenced Plaintiff's cerebral atrophy or not, he specifically evaluated her functional capacity and limitations, and that evaluation was supported by another physician. The ALJ reviewed and considered objective medical tests as well, such as Plaintiff's MRI, noted doctors' comments about her abilities and progress, and used these comments in setting further limitations on Plaintiff's RFC. Plaintiff has not shown a "gap" in the evidence that would be filled by an additional evaluation. Rather, she has only *speculated* that there might be additional limitations that *might* be proposed by another consultative physician or medical expert.[1] Nor has Plaintiff pointed to a fatal ambiguity (or any at all) in the

---

[1] Plaintiff also speculates that a medical expert might have opined that Plaintiff met or equaled some other listing not considered by the ALJ, such as that for Chronic Brain Syndrome. [Pltf.'s Mem. at 3.] As the Commissioner correctly points out, Plaintiff has not offered a plausible theory of equivalence with the Chronic Brain Syndrome or any other listing. [Def.'s Mem. at 3, (citing *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2005)).] Consequently, the ALJ's failure to consider other, potentially equivalent listings is not error.

medical record. Thus, the ALJ's duty to further develop the record was not triggered.

## CONCLUSION AND ORDER

For the reasons stated above, the Court finds that the Commissioner's decision is supported by substantial evidence and free from material legal error. Neither reversal of the ALJ's decision nor remand is warranted.

Accordingly, **IT IS ORDERED** that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

**IT IS SO ORDERED.**

DATED: August 31, 2016

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE